Norton *v.* Nye.

———————◆———————

## Micah W. Norton *versus* Joseph F. Nye.

Lawful money cannot be held derelict in the hands of a deputy sheriff into whose possession it came by virtue of a search warrant.

The refusal of the deputy to pay over money thus obtained, to one entitled to receive it, on demand, is a misfeasance for which the sheriff is liable.

To an action of trespass against the sheriff for such a misfeasance, it is no defence, that the plaintiff secreted the money in the house of another person, for the unlawful purpose of laying a foundation for a prosecution for larceny against him; that, thereupon he made a complaint, under oath, to a trial justice, that the money was stolen from the plaintiff's possession by such person and concealed in the latter's dwellinghouse; that, upon a search warrant duly issued thereon, the defendant's deputy searched and found in such dwellinghouse the money, which, together with such person was returned before a trial justice, who, after examination, discharged the respondent, and declined to make any order concerning the money, but left the same in the hands of the deputy; and, that the allegations in the complaint were false, and known to be false by the plaintiff, when he signed and made oath to them.

Whether, if the deputy, after the discharge of the accused, had returned the money into the possession of him from whom it was taken, this suit could have been successfully defended; *quære.*

Or whether, if the money had been thus returned, the plaintiff could, under the circumstances, recover it from the accused; *quære.*

On Report.

TRESPASS against the sheriff of Somerset county; for that the defendant, by Josiah D. Bartlett, his deputy, on July 1, 1865, with force and arms, seized, took and carried away five hundred dollars, in bank bills, current in this State as money, and of the value of five hundred dollars, the proper- ty of the plaintiff, and unlawfully converted the same, &c.

Plea, general issue with brief statement.

The plaintiff testified that the $500, mentioned in the de- claration, was his property, and was taken from his house in his absence, on Aug. 9, 1865; that one Fletcher was at his house on that day, and was the only person there who was not a member of the plaintiff's family; that he missed the money about 5 o'clock in the afternoon, and immediately after procured a search warrant and placed it in the hands of Bartlett for service, who searched Fletcher's house, found the money, arrested Fletcher and took him before a trial justice, who, after an examination, discharged Fletcher. The complaint, warrant, return of the officer and the record of the magistrate were put into the case. The record of the magistrate was as follows :—

"Somerset, ss :— September 6, 1865. — Upon the forego- ing complaint and warrant, which are hereby referred to and make part of this record, returned before me this day, as appears by the officer's return of service thereon, the said Jesse Fletcher was brought before me, one of the trial justices within and for said county, and after examination was duly discharged. And no offence having been proved against him, I made no order and gave no direction touch- ing the five hundred dollars mentioned in the officer's return of service on said warrant, or touching the disposal thereof, but left the same in the hands of said officer to be dispos- ed of according to law and the rights of the parties."

During the examination before the magistrate, Bartlett produced the money and it was laid on the table and exam- ined, but he put it up again in his pocket and carried it away. It consisted of two fifties, two or three twenties, and balance in fives and tens on various National and State

Banks, and part of the bills were United States greenbacks. No schedule of the money was made by said Bartlett and attached to his return. On the day said Fletcher was discharged and after the discharge, the plaintiff demanded the money of Bartlett, who said he did not feel at liberty to give up the same, that he had doubts whether he should give it up, and alleged that he expected an order of the Court, which was soon to sit in this county, to give up the money to the plaintiff, and as soon as he received such order he would do so. At said Court, plaintiff asked him about the money and Bartlett said he had taken it out of the bank and supposed the Court would pass an order, but it has not, and he should return the money to the bank. No such order, however, was ever obtained, nor was any indictment found or returned against said Fletcher in said Court, nor was there any further prosecution against him. After the adjournment of said Court and before the commencement of this suit, the plaintiff several times demanded the money of Bartlett, who as often refused to give it up.

At the trial of the present suit, the defendant proposed to offer evidence to prove the allegations in the brief statement. The Court ruled that, if proved, they would constitute no defence to the action, and excluded the evidence. Thereupon, by consent of parties, the case was withdrawn from the jury and reported to the full Court upon the testimony and facts, the defendant for the purposes of the trial admitted that the money sued for was the property of the plaintiff before it came into the hands of said Bartlett, his deputy. If the evidence offered and excluded was admissible, and would constitute a sufficient defence, the action was to stand for trial, unless the Court should be of opinion that the defendant, as sheriff, was not liable in this suit for the foregoing acts of his deputy. In that event, a nonsuit was to be entered.

But, if said Sheriff was so liable, and the evidence offered was properly excluded, judgment was to be entered for the plaintiff.

The brief statement appears in the opinion.

*D. D. Stewart*, for the plaintiff.

The deputy held the money in his official capacity, and is liable for the money. R. S. c. 120, §§ 10, 11. The magistrate had no authority over the money. *Ibid.*

Upon the discharge of the supposed offender, the common law right of the plaintiff to his property instantly attached, and the officer should have returned it immediately. *Commonwealth* v. *Boudrie*, 4 Gray, 418; *Fitzgerald* v. *Jordan*, 11 Allen, 128.

The retention of the money was a breach of official duty, and the plaintiff could maintain his action for it. R. S., c. 120, § 12; *Knowlton* v. *Bartlett*, 1 Pick., 271, 273, 274.

Defendant is "answerable" for official misconduct and neglect of his deputies. R. S., c. 80, § 8.

The deputy is "answerable." R. S., c. 120, § 10; *Robinson* v. *Howard*, 7 Cush., 257, 258, 259; *Fitzgerald* v. *Jordan, ubi supra; Smiley* v. *Allen*, 13 Allen, 465.

Sheriff is liable, whenever his deputy would be, for acts done under color of office. *Knowlton* v. *Bartlett, ubi supra; Marshall* v. *Hosmer*, 4 Mass., 63; *Smith* v. *Berry*, 37 Maine, 303.

Evidence offered no defence. *Welsh* v. *Wesson*, 6 Gray, 505–6. No law confiscates the money. Plaintiff cannot be deprived of his property but by due process of law. *Rockwell* v. *Nearing*, 35 N. Y., 305, 306.

*John S. Abbott*, for the defendant.

A party guilty of a violation of the law cannot successfully invoke the aid of the law touching any matter growing out of such violation. It makes no difference by which party the illegal act is shown.

A man, learning that his neighbor with whom he is at variance, is to leave home late at night, places a loaded gun in such a position as to be discharged upon his neighbor's opening the door, — with the intent to kill him. He is detected and the gun taken. After demand and refusal he

Norton *v.* Nye.

sues for his gun. Or, he puts poison and large steel traps in his neighbor's pasture to destroy his neighbor's cattle, is detected before his purpose is accomplished and the poison and traps taken. After demand and refusal, he sues for the poison and traps. He may make out a *prima facie* case of conversion without showing any wrongful act. Can't the defendant show the wrongful act in defence?

When one parts with his property in the perpetration of crime, the mildest view to be taken for the plaintiff in such case is to treat the property as derelict.

A highwayman attacks a traveller and in attempting to rob him, throws his bowie knife and revolver at him. The robber escapes and afterwards finding his knife and revolver in possession of a third person, and after demand and refusal brings replevin, trespass or trover. He could prove the articles to have been his before they came into the possession of the defendant, possession by the defendant, demand and refusal. He did not intend to abandon his property; he intended to rob, then pick up his property and retire. This is analogous to case at bar. The property became "outlawed." *Lord* v. *Chadbourne*, 42 Maine, 440.

Defendant, if liable at all, is not liable in trespass. The original taking was in obedience to a precept and not wrongful. No such subsequent wrongdoing by Bartlett as to make defendant a trespasser *ab initio*. Retention of the money was simply a nonfeasance, and will not make defendant a trespasser *ab initio*. *Gardner* v. *Campbell*, 15 Johns., 401 ; *Ross* v. *Philbrick*, 39 Maine, 34.

Defendant is not liable if Bartlett is.

"Official misconduct and neglect," mentioned in R. S., c. 80, § 8, does not apply to such conduct or neglect while in the execution of criminal process. At most, it embraces only "official misconduct and neglect." Bartlett's official acts ceased when the money was returned before the magistrate and the examination ended.

CUTTING, J. — Trespass against the defendant as sheriff of Somerset county, for the misfeasance of one Josiah D. Bartlett, his deputy. For the purposes of the trial at *nisi prius*, and to present certain questions of law, it was admitted that the money sued for ($500) was the property of the plaintiff before it came into the hands of the deputy, of whom it was demanded prior to the commencement of this suit.

Upon the evidence produced by the plaintiff, we are of the opinion that he would be entitled to judgment, unless the testimony offered in defence was improperly excluded, or that for the alleged default of his deputy the defendant is not liable; questions raised in the specifications and a brief statement of his defence.

The evidence offered, and ruled inadmissible, was to sustain the following brief statement, .viz. : — "And for his brief statement in this behalf, the defendant says, that, on the 11th of August, 1865, he was and ever since has been a sheriff within and for the said county of Somerset; and that one Josiah D. Bartlett then was and ever since has been a deputy sheriff within and for said county, under him duly appointed and qualified.

"That, on said 11th day of August, 1865, the plaintiff made a complaint to one William Bartlett, a trial justice, charging that one thousand dollars in bank bills, the property of the plaintiff, had been feloniously stolen and carried away from his possession; and that he had probable cause to suspect, and did suspect, that the same had been stolen by Jesse Fletcher of Embden; and that the same, or a part thereof, was concealed in said Fletcher's dwellinghouse, and requesting a search warrant with an order to arrest said Fletcher.

"'That, on the same day, a warrant was issued, in due form, by said William Bartlett, as such trial justice, addressed to the sheriff of said county, or either of his deputies, or any coroner of said county, and delivered to said

Josiah D. Bartlett, defendant's deputy, as aforesaid, and a coroner, within and for said county of Somerset, for service.

"That, on the 6th day of September, 1865, said Josiah D. Bartlett duly served and executed said warrant; and, in accordance with his doings therein, made his return thereon, in substance, that he had searched said dwellinghouse and found a package of money containing five hundred dollars, and that he had the same and said Fletcher before Sullivan Williamson, Esq., a trial justice, within and for said county of Somerset, for examination. That, on said 6th day of September, said Williamson, at New Portland, in said county, after an examination and full hearing touching the charges and allegations in said complaint, at which hearing the said Norton appeared, with counsel, and took part therein throughout the hearing, and was examined as a witness, decided and adjudged that said Fletcher was not guilty as it had been alleged in said complaint said Norton suspected, and he acquitted and discharged him."

Had the brief statement, which was offered to be proved, terminated here, evidence as to its truth may have been properly excluded, since it had been admitted that the money sued for, before it came into the hands of the deputy, was the property of the plaintiff.

But the statement proceeds further and says, — "If the money belonged to the plaintiff, he placed it in the house of said Fletcher for the wicked and unlawful purpose of causing the arrest and conviction of said Fletcher, and that the material allegations and charges contained in said complaint, signed and sworn to by the plaintiff, are false, and were by the plaintiff known to be false when he signed and swore to the same."

If such an allegation be true, the plaintiff, it is argued with much force, instead of being in a court of justice, should be incarcerated with convicted perjurers, far from any aid from the court, and, perhaps, beyond the Executive clemency; and, as the case is presented, that allegation must be presumed to be true.

But the plaintiff is in court, and not in prison. For some cause the injured party has not seen fit to institute a criminal prosecution; and the plaintiff, under the admission that the money was his before the time it came into the possession of the defendant's deputy, brings this action for its recovery, and calls on him to account for its detention. If it was once the property of the plaintiff, it remains his until some person shows a superior title. If the officer, after all criminal proceedings had been terminated, instead of retaining the money, had returned it into the possession of the person from whom he had taken it, as he might lawfully have done, perhaps this suit might have been successfully defended; but upon this point we express no opinion, and, in a suit against a person, in whose possession the money was found, perhaps the plaintiff, under the circumstances, could not have prevailed, as no Court would have been willing to lend its aid to a party guilty of such infamy; and, in such case, the able argument of the defendant's counsel would have been conclusive. But Jesse Fletcher, the party criminally charged, sets up no claim to the money or on the officer who took it from his constructive possession.

Then it is contended that this action for the money cannot be maintained, because it becomes derelict, and such defence is set forth in the brief statement. Such defence might have prevailed in an action against Fletcher, but we know of no decision in the whole history of jurisprudence where property was held to be derelict in the hands of an officer taken on judicial process.

Again, the specification discloses, and it is urged, that trespass does not lie against the sheriff; first, because the property was rightfully taken, and secondly, because, if rightfully taken, and not delivered on demand, it was nonfeasance, and not misfeasance as alleged, and, for the latter, trespass *ab initio* cannot be maintained. But the neglect to pay over money in the hands of an officer, to one entitled to it, on demand, is not only an act of nonfeasance but also of misfeasance, and, for such misdemeanor on the part of

the deputy, the sheriff is liable, whether it occurs in the service of civil or criminal process.

On the whole, our conclusion is, that the evidence offered was rightfully excluded, and, according to the agreement of the parties,

*Judgment must be rendered for the plaintiff.*

WALTON, DICKERSON, DANFORTH and TAPLEY, JJ., concurred.